HARKINS v DEPARTMENT OF NATURAL RESOURCES

Docket No. 145757. Submitted March 8, 1994, at Lansing. Decided May 24, 1994; approved for publication July 25, 1994, at 9:25 A.M. Leave to appeal denied, 447 Mich —.

Donald L. Harkins sought a permit from the Department of Natural Resources to fill the wetland portion of his lakefront property for the purpose of access to the lake. The DNR denied the application. Harkins petitioned for a contested case hearing before the Natural Resources Commission. During the pendency of the hearing, the DNR issued a modified permit allowing him to create a ten-foot-wide access path through the wetland and a small sandy beach at the shoreline. Harkins continued to pursue his appeal. A hearing referee found the DNR's decision to deny the application to be supported by the evidence. The Natural Resources Commission adopted the referee's proposal for decision. Harkins appealed to the Oakland Circuit Court, and the court, Jessica R. Cooper, J., affirmed the commission's decision. Harkins appealed.

The Court of Appeals held:

1. Harkins' arguments regarding the constitutionality of the Wetland Protection Act, MCL 281.701 et seq.; MSA 18.595(51) et seq., were not raised in the circuit court and, therefore, were not preserved for appeal.

2. The decision of the DNR to deny the application for the permit was not arbitrary or capricious because a feasible and prudent alternative existed to accomplish Harkins' purpose of gaining access to the lake, i.e., a public-access route or the ten-foot-wide path approved in the modified permit.

3. The DNR did not violate the statutory requirement that where it does not hold a hearing on a wetland fill permit

REFERENCES

Am Jur 2d, Administrative Law § 253; Constitutional Law § 421; Pollution Control § 46.

Conservation: validity, construction, and application of enactments restricting land development by dredging or filling. 46 ALR3d 1422.

Local use zoning of wetlands or flood plain as taking without compensation. 19 ALR4th 756.

application it must either approve or disapprove the permit application within ninety days after the completed permit application is filed. Because Harkins' original application did not contain sufficient information to be acted upon by the DNR, it was not complete until the DNR received the additional information it required from him. The DNR's disapproval occurred within ninety days of its receipt of the completed application. The act does not require that the applicant be given notice of the action within ninety days; it only requires that the approval or disapproval occur within ninety days.

4. The DNR's denial of the application for the permit was not an unconstitutional taking of Harkins' land. Because Harkins will not be denied all economically viable use of his land and the act advances a legitimate state interest, no compensable taking occurred.

Affirmed.

1. ADMINISTRATIVE LAW — WETLAND PROTECTION ACT — WETLAND
   FILL PERMITS — DEPARTMENT OF NATURAL RESOURCES.

   The Wetland Protection Act provides that the Department of Natural Resources, where it does not hold a hearing on a wetland fill permit application, must either approve or disapprove the permit application within ninety days after a completed application is filed; an application that cannot be acted upon because of a lack of information is not complete until it contains sufficient information to be acted upon; the act only requires that the department approve or disapprove the application within ninety days, not that the applicant be given notice of such action within ninety days (MCL 281.708[2]; MSA 18.595[58][2]).

2. STATUTES — WETLAND PROTECTION ACT — PURPOSE OF ACT.

   The primary purpose of the Wetland Protection Act is to ensure that wetland habitats are preserved and protected; the act advances a legitimate state interest (MCL 281.701 *et seq.*; MSA 18.595[51] *et seq.*).

3. CONSTITUTIONAL LAW — WETLAND PROTECTION ACT — WETLAND
   FILL PERMITS — COMPENSABLE TAKINGS.

   A compensable taking does not occur where the Department of Natural Resources, pursuant to the Wetland Protection Act, properly denies a property owner's request for a wetland fill permit if the owner is not denied all economically viable use of the property (MCL 281.701 *et seq.*; MSA 18.595[51] *et seq.*).

*William J. Reisdorf,* for Donald L. Harkins.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *James E. Riley*, Assistant Attorney General, for the Department of Natural Resources.

Before: Hood, P.J., and Neff and T. E. Jackson,* JJ.

Per Curiam. This is an appeal from a decision of the Oakland Circuit Court affirming the Natural Resources Commission's decision to deny petitioner a permit to fill the wetland portion of his property pursuant to the Wetland Protection Act (WPA), MCL 281.701 *et seq.*; MSA 18.595(51) *et seq.*

The relevant facts are as follows. Petitioner's residence is situated on a lakefront parcel of land on Woodhull Lake. On March 17, 1987, petitioner sought a permit from the Department of Natural Resources to fill the wetland portion of his property. Following a site evaluation, the DNR denied the application. Petitioner then filed a petition for a contested case hearing before the Natural Resources Commission (NRC). Petitioner then moved for summary disposition pursuant to MCR 2.116(C)(10), claiming that he was entitled to the permit as a matter of law. The motion was denied.

During the pendency of petitioner's hearing before the NRC, a modified permit was issued to him by the DNR. The modified permit enabled him to create a ten-foot-wide access path through the wetland for access to the lake and a small sanded beach at the shoreline. Despite having been issued the modified permit, he continued to pursue his appeal before the NRC.

During the course of the administrative proceeding, DNR personnel testified that the complete

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

filling of the wetland along the shore of Woodhull Lake was not required for appellant to accomplish his proposed activity (lake access). Instead, it was stated that the ten-foot-wide path called for in the modified permit would be sufficient for this purpose. Moreover, the testimony revealed that although the environmental impact of petitioner's contemplated wetland filling would be minimal, the cumulative environmental impact resulting from the issuance of similar pending permits to other landowners along Woodhull Lake would be so great that the resultant effect to the public trust outweighed the private interest in filling and developing the area. A hearing referee supported the DNR's original decision to deny petitioner a permit. The referee's "Proposal for Decision" was adopted by the NRC as its own. This decision was subsequently affirmed by the Oakland Circuit Court.

First, petitioner argues that the requirement under the WPA that an applicant show either that the proposed activity is dependent upon being located in a wetland or that no reasonable and prudent alternative exists is unconstitutional and, thus, the hearing referee's decision must be overturned. Petitioner failed to raise this constitutional argument before the lower court. Accordingly, we will not review this portion of his argument because the trial court must be given an opportunity to pass upon the constitutionality of the rule involved. *Hernandez v Consumers Power Co,* 51 Mich App 288, 291; 214 NW2d 846 (1974). Additionally, petitioner claims that as either a nuisance statute or a zoning regulation, the WPA is unconstitutional. Again, because this argument was not addressed below, we will not review it. *Id.*

Moreover, we decline petitioner's invitation to overturn the DNR's decision to deny his permit,

because the agency's decision was not arbitrary or capricious. MCL 24.306(1)(e); MSA 3.560(206)(1)(e). The primary purpose of the WPA is to ensure that wetland habitats are preserved and protected. *Citizens Disposal, Inc v Dep't of Natural Resources,* 172 Mich App 541, 551; 432 NW2d 315 (1988). Section 5 of the WPA provides that in order to fill certain wetlands a property owner must receive a permit from the DNR. MCL 281.705(a); MSA 18.595(55)(a). The DNR may not issue a permit to fill wetlands unless certain criteria are satisfied. A permit will not be issued unless (1) the proposed activity will not unacceptably disrupt the aquatic resources, and (2) either (a) the proposed activity is primarily dependent upon being located in the wetland, or (b) a feasible and prudent alternative does not exist. MCL 281.709(4); MSA 18.595(59)(4).

Petitioner's initial permit application listed lake access as the project's purpose. Below, the DNR stated that petitioner could have access to the water by alternative means—namely, a public-access route. Additionally, a modified permit was issued whereby petitioner was allowed to construct a ten-foot-wide path through the wetland in order to gain access to the lake from his property. Because a feasible and prudent alternative existed to accomplish petitioner's purpose of gaining access to the lake, it is clear that the hearing referee's decision was not arbitrary or capricious. *Id.*

Additionally, petitioner argues that he is entitled to the original permit as a matter of law because the DNR failed to act on his application within the statutorily designated ninety-day period. MCL 281.708(2); MSA 18.595(58)(2) provides that where the DNR does not hold a hearing on a wetland fill permit application, "the [DNR] *shall* approve or disapprove the permit application within 90 days after the completed permit applica-

tion is filed . . . . If the [DNR] does not approve or disapprove the permit application within the time provided . . . [it] *shall be considered approved,* and the [DNR] shall be considered to have made the determinations required by section 9." Petitioner's argument here is unavailing.

Petitioner's initial permit application was filed on March 19, 1987. On March 30, 1987, the DNR requested additional information from him, and received the information on April 7, 1987. The DNR denied the permit application through a letter dated June 16, 1987. However, the envelope was postmarked on June 22, 1987. Petitioner argues that the ninety-day period commenced when the DNR received his initial permit application on March 19, 1987. Hence, according to petitioner, the DNR failed to respond to the permit application within ninety days because the denial letter was postmarked June 22, 1987. We disagree.

The DNR was not in a position to act on petitioner's original application because it did not contain sufficient information. Hence, the request for additional information was made. Given the DNR's obligation to effectuate the purposes of the WPA, we agree with the DNR that requests for additional and more specific information from applicants are not unreasonable. Therefore, if an application is such that it cannot be acted upon because of a lack of information, we cannot fairly characterize the application as "complete." Instead, an application is to be considered "complete" when it contains sufficient information to be acted upon. In this case, the application was not "complete" until the DNR received the additional information from petitioner on April 7, 1987. Accordingly, the DNR had until at least July 7, 1987, to make a decision. Therefore, even if we were to use the postmark date (June 22, 1987) as urged by petitioner, it is

clear that the DNR did not violate the ninety-day statutory requirement.

Moreover, the statute does not require that the applicant be given notice of the action within ninety days; it only requires that the DNR either approve or disapprove the application within ninety days. *People v Keeth,* 193 Mich App 555, 558-559; 484 NW2d 761 (1992). Therefore, even if we were to agree with petitioner that his application was "complete" on March 19, 1987, we would still hold that the DNR did not violate the statute because the letter denying petitioner's application was dated June 16, 1987. Put another way, it does not matter if petitioner received notice of this after the expiration of the ninety-day period as long as the DNR's decision was made prior thereto. *Id.*

Petitioner next argues that the application of the WPA to his property violates the Fourteenth Amendment of the United States Constitution because the subject property was conveyed to a private citizen through a federal patent before Michigan's statehood. This issue was not raised or addressed below. Moreover, petitioner has attempted to expand the record by supplying exhibits that were not a part of the record below. Because reference to these exhibits is necessary to resolve the instant issue, and because this Court's review is limited to the record developed by the trial court, we decline to address the issue. MCR 7.210(A)(1); *Wiand v Wiand,* 178 Mich App 137, 143; 443 NW2d 464 (1989).

Finally, petitioner argues that the denial of his application for a permit to fill the wetland area of his property amounts to an unconstitutional taking of his land. Again, we disagree. Petitioner claims that the value of his property would double if he were allowed to fill the entire wetland area

as originally requested. We note that an owner who is deprived from making the most profitable use of his property is not necessarily entitled to compensation. *Penn Central Transportation Co v New York City,* 438 US 104, 124; 98 S Ct 2646; 57 L Ed 2d 631 (1978). Moreover, petitioner has not argued that application of the WPA to his parcel as a whole has deprived him of all economically beneficial use thereof. *Id.* To the contrary, the record establishes that petitioner will not be denied all economically viable use of his land. Accordingly, because the WPA unquestionably advances a legitimate state interest, we conclude that no compensable "taking" has occurred.

For these reasons, we affirm the circuit court's affirmance of the DNR's decision to deny petitioner's application for a permit to fill the entire wetland portion of his property.

Affirmed.